UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-697-MOC-DSC

| | |
|---|---|
| RICKY W. CAMPBELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) ORDER |
| | ) |
| ALEJANDRO MAYORKAS, | ) |
| Secretary, Department of Homeland Security, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Motion to Dismiss, filed by Defendant.[1] (Doc. No. 7).

I. BACKGROUND

Plaintiff Ricky Campbell is a former TSA employee who worked as a Lead Transportation Security Officer ("LTSO") at the Charlotte Douglas International Airport.[2] Plaintiff's Complaint is long and rambling, and it is not clear what claims he intends to bring. The crux of Plaintiff's claims is that, after submitting a Family Medical Leave Act ("FMLA") request in which he disclosed five separate disabilities, TSA—whose security screeners are, after the September 11th attacks, statutorily required to demonstrate a fitness for duty—sent him a

---

[1] Plaintiff originally named Chad Wolf, former Acting Secretary for the Department of Homeland Security, as Defendant. Alejandro Mayorkas, Secretary for the Department of Homeland Security, of which the Transportation Security Administration ("TSA") is a component agency, has been substituted as the proper Defendant.

[2] This is Plaintiff's fourth employment-related case against the TSA filed in this district. See WDNC Case Nos. 3:11-cv-68; 3:16-cv-691; and 3:17-cv-707.

1

fitness for duty questionnaire and subsequently issued a Notice of Medical Removal, terminating Plaintiff's employment.

Plaintiff asserts that began his employment with the TSA at the Charlotte Douglas International Airport ("CLT") on July 7, 2007, and, at all relevant times, worked as an LTSO until January 28, 2017.  (Doc. No. 1, Compl. at pp. 2–3).  The factual predicate for Plaintiff's instant suit is the same as that adjudicated before the Equal Employment Opportunity Commission ("EEOC").[3]  Specifically, Plaintiff complains that he was discriminated against and subjected to a hostile work environment on the basis of five different disabilities and in reprisal for prior EEO activity when: Plaintiff's FMLA requests submitted in October 2016 were denied; Plaintiff received a Fitness-for-Duty ("FFD") questionnaire on December 16, 2016; and Plaintiff was issued a Notice of Medical Removal on January 21, 2017.  See (Doc. No. 7-2 at p. 25: Gov't Ex. A).  Plaintiff further complains that his protected health information ("PHI") was improperly disclosed to TSA management in violation of the Health Insurance Portability and Accountability Act ("HIPAA").  (Compl. at p. 19).

Defendant filed the pending motion to dismiss on April 7, 2021.  In support, Defendant argues that, at its broadest interpretation, Plaintiff appears to bring claims pursuant to the ADA, FMLA, HIPAA, the Rehabilitation Act, Title VII claims for harassment/hostile work environment, and retaliation claims under both the Rehabilitation Act and Title VII.  After Defendant filed its motion to dismiss and supporting memorandum, Plaintiff conceded that he is

---

[3] Defendant attached Plaintiff's relevant EEOC complaints and decisions, of which the Court may properly take judicial notice.  See Golden v. Mgmt. & Training Corp., 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) ("In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions.").

not pursuing claims under the FMLA or HIPAA. Thus, the Court does not discuss the motion to dismiss arguments as to whether has stated claims under FMLA or HIPAA.

The instant federal complaint stems from two consolidated EEO matters presented to the agency, HS-TSA-00664-2017, initiated on January 10, 2017, and HS-TSA-01037-2017, initiated on March 3, 2017. (Compl. at p. 2). The EEOC granted summary judgment to the TSA, which was upheld on appeal. (Doc. No. 7-2 at pp. 4, 25). Specifically, the EEOC held that when Plaintiff submitted his FMLA request, he listed five separate medical conditions (migraine headaches, degenerative joint disease, back pain, arthritis, and chronic depression), several of which were potentially disqualifying pursuant to the agency's medical guidelines.[4] (Id. at p. 3). This triggered the request for a fitness for duty evaluation, and "[w]hen Complainant's physician was asked if his impairments prevented Complainant from performing his job duties, he marked 'yes' and stated that Complainant is at times unable to perform the duties of his job as Lead TSO." (Id. at pp. 3–4). According to the EEOC's Appellate Decision, Plaintiff resigned rather than face removal. (Id. at p. 16). Ultimately, the ALJ granted summary judgment for the TSA on all of Plaintiff's claims based on disability discrimination and reprisal and harassment/hostile work environment claims. (Id. at p. 4).

II.     **STANDARD OF REVIEW**

**A. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule

---

[4] TSA security screeners are statutorily required to "demonstrate daily a fitness for duty without any impairment," 49 U.S.C. § 44935(e)(2)(A)(v), and "possess basic aptitudes and physical abilities," id. at § 44935(f)(l)(B).

12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

**B. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move the Court for dismissal of claims over which the Court lacks subject-matter jurisdiction. The plaintiff then bears the burden of proving the existence of subject-matter jurisdiction. Smith v. Wash. Metro.

Area Transit Auth., 290 F.3d 201, 205 (4th Cir. 2002). The existence of subject-matter jurisdiction is a threshold issue the Court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). In considering a motion challenging the factual basis for subject-matter jurisdiction, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The Court should grant the motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. Dismissal with prejudice is appropriate when a jurisdictional defect in the plaintiff's complaint is incurable. See, e.g., McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009).

### III. DISCUSSION

**A. Plaintiff's ADA Claim**

First, to the extent Plaintiff purports to state a claim for a violation of the ADA, federal employees may not bring suit under the ADA. See Brown v. Henderson, 6 Fed. Appx. 155, 156 (4th Cir. 2001) (unpublished) (finding that "the Postal Service is not subject to suit under the ADA"); Rivera v. Heyman, 157 F.3d 101, 103 (2d Cir. 1998) (finding that "a federal employee . . . has no remedy for employment discrimination under the ADA," and as such, the "sole claim for discrimination on the basis of disability is under the Rehabilitation Act"); Henrickson v. Potter, 327 F.3d 444, 447 (5th Cir. 2003) (stating that "the entire federal government is excluded from coverage of the ADA"). Because Plaintiff is a former federal employee asserting ADA claims against Defendant, these claims are legally deficient and must be dismissed pursuant to Rule 12(b)(6). See Jackson v. Napolitano, No. CV-09-1822-PHX-LOA, 2010 WL 94110, at *3

(D. Ariz. Jan. 5, 2010) (dismissing ADA claim of TSA security screener under Rule 12(b)(6)). Thus, the Court dismisses Plaintiff's ADA claim.

**B. Plaintiff's Rehabilitation Act Claim**

The Rehabilitation Act provides the exclusive remedy for federal employees claiming discrimination based on disability. See Rivera, 157 F.3d at 103. However, because Plaintiff was employed as TSA security screener, his Rehabilitation Act claim must be viewed in the context of the Aviation and Transportation Security Act ("ATSA")—which precludes TSA security screening personnel from bringing suit under the Rehabilitation Act.

As a result of the terrorist attacks against the United States on September 11, 2001, Congress passed the ATSA, Pub. L. No. 107-71, 115 Stat. 597 (2001) (codified principally in scattered sections of 49 U.S.C.) to bring about a "fundamental change in the way" the United States "approaches the task of ensuring the safety and security of the civil air transportation system." 147 Cong. Rec. H8262-01, 2001 WL 1451916 (Cong. Rec.) at Joint Explanatory Statement § 2 (2001). A key aspect of that fundamental change was the creation of a federal workforce to screen passengers and cargo at commercial airports. ATSA, § 111, 115 Stat. 616, amending 49 U.S.C. § 44935.

The ATSA authorizes the creation of the TSA screener workforce and contains both general and specific grants of personnel authority to TSA. Specifically, Section 111(d) of ATSA states:

> The Administrator shall establish qualification standards for individuals to be hired by the United States as security screening personnel. Notwithstanding any other provision of law, those standards shall require, at a minimum, an individual—
>
> (i) to have a satisfactory or better score on a Federal security screening personnel selection examination;

6

>    (ii) to be a citizen of the United States or a national of the United States, as defined in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));
>    (iii) to meet, at a minimum, the requirements set forth in subsection (f);
>    (iv) to meet such other qualifications as the Administrator may establish; and
>    (v) to have the ability to demonstrate daily a fitness for duty without any impairment due to illegal drugs, sleep deprivation, medication, or alcohol.

49 U.S.C.A. § 44935(e)(2)(A). Additionally, 49 U.S.C. § 44935(f) provides that "[n]otwithstanding any other provision of law, an individual may not be deployed as a security screener unless that individual meets [certain enumerated requirements]," and screeners must "possess basic aptitudes and physical abilities, including color perception, visual and aural acuity, physical coordination, and motor skills." These statutory requirements for physical aptitude apply "notwithstanding any other provision of law," and courts have interpreted Congress's use of "notwithstanding" in Section 111(d) of ATSA and Section 44935(e) and (f) as barring TSOs such as Plaintiff from bringing suit under the Rehabilitation Act. See Field v. Napolitano, 663 F.3d 505, 512 (1st Cir. 2011) ("ATSA plainly precludes security screeners from bringing suit under certain of the federal employment statutes … including the Rehabilitation Act."); Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1337 (11th Cir. 2006) (per curiam) ("Every circuit to address the issue has agreed that the language of the ATSA plainly precludes security screeners from bringing suit under . . . the Rehabilitation Act."); Joren v. Napolitano, 633 F.3d 1144, 1146 (7th Cir. 2011) (per curiam), cert. denied, 132 S. Ct. 290 (2011) ("We now join every other circuit to have considered the question and conclude that the plain language of the ATSA preempts application of the Rehabilitation Act to security screeners."); Connors v. United States, 863 F.3d 158, 162 (2d Cir. 2017) (noting consensus among circuits); Coleman v. Sec'y U.S. Dep't of Homeland Sec., 649 F. App'x 128, 129 (3d Cir. 2016) ("[A]ny claim under the Rehabilitation Act fails as the ATSA precludes TSOs from bringing claims under that Act

7

against the TSA.").

Further, district courts in this circuit have consistently held that the ATSA preempts a TSO's Rehabilitation Act claims. See Wilkins v. Napolitano, No. 2:13-CV-2965-S8, 2014 WL 5365650, at *3 (D.S.C. Oct. 21, 2014), aff'd sub nom. Wilkins v. Johnson, 589 F. App'x 191 (4th Cir. 2015) ("The long and short of the matter is that Congress intended that TSA implement hiring standards and conditions of employment, including physical standards, for screeners such as Plaintiff, whether or not those standards and conditions of employment are consistent with the Rehabilitation Act."); Floyd v. U.S. Dep't of Homeland Sec., No. CIV.A. RDB-09-0735, 2009 WL 3614830, at *4 (D. Md. Oct. 27, 2009) (Rehabilitation Act claims by TSO preempted); Ringgold v. Napolitano, No. CIV. CCB-13-210, 2013 WL 4852246, at *2 (D. Md. Sept. 10, 2013) (accord). As Plaintiff's claims are that management harassed and discriminated against him for his disability, they fall under the ambit of the Rehabilitation Act and are preempted by the ATSA. Thus, the Court dismisses Plaintiff's Rehabilitation Act claim.

**C. Plaintiff's Harassment/hostile Work Environment Claims Based on the Rehabilitation Act**

The only specific facts Plaintiff alleges in terms of his harassment and/or hostile work environment is that he received the fitness for duty questionnaire and was issued a notice of medical removal. But these are the same facts that underlie his Rehabilitation Act claim. As the Rehabilitation Act is unavailable to Plaintiff as a ground for relief, that fact likewise bars his allegations of a hostile work environment based on his disability or disabled status. See Brady v. Bd. of Educ. of Prince George's Cty., 222 F. Supp. 3d 459, 471 (D. Md. 2016) (evaluating disability based hostile work environment claim under Rehabilitation Act). Likewise, any retaliation claim founded on Plaintiff's engagement in activities protected by the Rehabilitation

8

Act are subsumed under that Act and barred. See Richardson v. Md. Transit Admin., No. 18-cv-0884, 2019 WL 1002597, at *9 (D. Md. Mar. 1, 2019) (noting that "[t]he Rehabilitation Act incorporates the American with Disability Act's anti-retaliation provision" and a viable retaliation claim under Rehabilitation Act or ADA must be predicated on conduct protected by Rehabilitation Act or ADA); Field v. Napolitano, 663 F.3d 505, 508 (1st Cir. 2011) (holding the ATSA preempts claims by screeners for disability discrimination and retaliation as a result of engaging in protected EEOC activity, and upholding district court decision that held, inter alia, "[b]ecause the plaintiff had no cause of action under the Rehabilitation Act, the retaliation claim also failed.").

### D. Plaintiff's Harassment/Hostile Work Environment Claims Based on Title VII

To the extent he presents a separate harassment/hostile work environment claim under Title VII, Plaintiff's Complaint fails to meet the pleading threshold for such a claim. Title VII prohibits discrimination based on the following protected characteristics—race, color, national origin, sex, and religion. The Supreme Court has recognized that Title VII provides a cause of action based on a hostile work environment where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993). The Fourth Circuit has held that to state a plausible claim for a hostile work environment, a plaintiff must allege that the conduct was: (i) unwelcome; (ii) based on a protected characteristic; (iii) sufficiently severe or pervasive to alter the conditions of his employment; and (iv) imputable to the defendant. See EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009).

Here, Plaintiff fails to plead any specific facts that support his assertion that he was

9

subject to a hostile work environment or harassment based on any protected characteristic—that is, race, color, national origin, sex, or religion. The only factual allegation in the Complaint that even refers to a protected characteristic is the following:

> The Plaintiff has been denied multiple promotions as Inspector, denied multiple promotions as Supervisor, denied the opportunity to interview for supervisor, scheduled last to be interviewed for all positions interviewed for, denied the opportunity to work overtime, had his overtime pay withheld, issued unwarranted Absent Without Leave Citation (AWOL), force [sic] to perform duties outside of his area, told by the Agency's legal staff that because of his race he had no rights and that his disabilities did not count when compared with another race, was delayed FMLA approval, forced to submit to unnecessary FFD [fitness for duty questionnaire] and without proper authority, wrongfully declared "Not Medically fit to Perform his Duties as LTSO" and removed from his employment at CLT.").

(Compl. at ¶ 60). To the extent that Plaintiff's reference to race in this single paragraph of the Complaint is offered to support a Title VII hostile work environment claim, Plaintiff did not raise this claim in his underlying EEOC proceedings; thus, he is barred from raising it here.[5] See Abdissa v. UNC Chapel Hill, No. 5:15cv394, 2017 WL 78479, at *2 (E.D.N.C. Jan. 6, 2017), aff'd, 689 Fed. Appx. 742 (4th Cir. 2017) (unpublished) ("'Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge with the Equal Employment Opportunity Commission (EEOC)' and '[t]his charge frames the scope of future litigation.' . . . To the extent plaintiff raises a separate retaliation claim against defendant, this claim is barred due to his failure to raise this claim before the EEOC and exhaust the administrative remedies available to him.") (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) (noting that when a plaintiff raises claims under Title VII that exceed the scope of the EEOC charge, they are procedurally barred)).

---

[5] This particular allegation also appears to be revisiting Plaintiff's claims brought in his other discrimination cases filed in this Court based on his failure to be hired for various TSA positions.

For the reasons stated herein, Plaintiff's Title VII hostile work environment/harassment is dismissed.

**E. Plaintiff's Retaliation Claim**

The only claim remaining is Plaintiff's purported claim for retaliation. First, to the extent that Plaintiff purports to assert a claim for retaliation based on agency activity that relates solely to TSA's permissible inquiry into Plaintiff's fitness for duty, this retaliation claim must be dismissed because it is premised on the Rehabilitation Act. Next, to the extent that Plaintiff asserts a separate claim for retaliation under Title VII, based on his prior EEO administrative complaints that he initiated in 2013, 2014, 2015, and 2016, Defendant contends that Plaintiff cannot establish a causal connection between his prior activity and the issuance of a FFD questionnaire or the notice of medical removal from his position as a LTSO. To assert a claim of retaliation under Title VII, "a plaintiff must show that (1) that the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC"; (2) the employer took an adverse action against the plaintiff; and (3) "the protected activity was causally connected to the employer's adverse action." Okoli v. City of Balt., 648 F.3d 216, 223 (4th Cir. 2011) (internal quotation omitted). Defendant contends that, even assuming that Plaintiff meets the first two prongs of the prima facie retaliation claim, he cannot meet the causal element because he cannot show temporal proximity between the prior EEO filings and his Notice of Medical Removal. The Court agrees with Defendant that Plaintiff is proceeding on a slender reed of factual allegations as to this claim. Nevertheless, given the lenient pleading standards of Iqbal and Twombly, the Court will deny the motion to dismiss at this time as to the Plaintiff's Title VII retaliation claim and hold it under consideration pending further development of the record.

**IV. CONCLUSION**

For the reasons stated herein, Defendant's motion to dismiss is **GRANTED** as to all claims, except for Plaintiff's Title VII retaliation claim.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Dismiss, (Doc. No. 7), is **GRANTED** in part and **DENIED** in part.

Signed: June 1, 2021

Max O. Cogburn Jr.
United States District Judge