UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-697-MOC

| | |
|---|---|
| RICKY W. CAMPBELL, | ) |
|                Plaintiff, pro se, | ) |
| vs. | ) |
| CHAD F. WOLF, | )   **ORDER** |
| Acting Secretary, Department of Homeland Security, | ) |
|                Defendant. | ) |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant. (Doc. No. 56).

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed this action against his former employer Transportation Security Administration ("TSA"). The sole remaining claim is Plaintiff's claim for retaliation under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), purportedly based on his EEO activity. Defendant filed the pending summary judgment motion on November 23, 2022. Plaintiff filed a Response, and Defendant filed a Reply. (Doc. Nos. 58, 59). The Court held a hearing on the summary judgment motion on June 23, 2023. Thus, this matter is ripe for disposition.

### B. Factual Background

Plaintiff Ricky Campbell was employed by TSA as a lead transportation security officer ("LTSO") at the Charlotte airport. (Doc. No. 1 at pp. 2–3). Plaintiff has a long history of filing

1

EEO complaints and litigating employment discrimination against TSA dating back to 2013. (See, e.g., Doc. No. 1, pp. 10–11, ¶¶ 55, 57). The EEO activity he contends forms the basis for his retaliation claim is one EEO complaint made on January 10, 2017, and then another made after he left TSA's employment. (Def. Ex. 1, Campbell Dep., 41:9-43:1).

### 1. Undisputed Facts Related to Plaintiff's FMLA Leave Request

Plaintiff requested FMLA leave[1] on October 25, 2016, through the submission of a Form WH-380-E, "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)." (Id. at 5:13–6:16; Doc. No. 20). Plaintiff testified that he requested FMLA leave due to multiple medical conditions, including migraine headaches, upper and lower back pain, pain in his legs and feet, arthritis, and chronic depression. (Id., p.3; Ex. 1 at 6:15–10:18). When Plaintiff submitted the FMLA leave request, he was taking medication for these conditions, including a pain medication, a migraine medication, and a depression medication. (Def. Ex. 1 at 10:19–11:8). Plaintiff admits that, on certain days, these conditions impacted his ability to perform his job as a TSA security screener. (Id. at 12:15–13:11).

TSA's Office of Chief Medical Officer (OCMO) was asked to review Plaintiff's WH-380-E certification "not to make a final decision or determination about LTSO Campbell's eligibility for FMLA but to simply advise if the FMLA request for a serious health condition is medically appropriate based on the provided information." (Doc. No. 19-5, p. 2). The OCMO requested either a separate WH-380-E form for each serious health condition or, if one form was used, additional information differentiated by each serious health condition. (Id.). Plaintiff

---

[1] The Family and Medical Leave Act entitles eligible employees to take unpaid leave for a variety of qualifying conditions, including "when the employee is unable to work because of a serious health condition." See https://www.dol.gov/agencies/whd/fmla/faq#1

2

Case 3:20-cv-00697-MOC-DCK   Document 61   Filed 07/14/23   Page 2 of 14

received this letter by email on October 27, 2016. TSA Safety and Occupational Health Specialist Lisa Freeman informed Plaintiff that his FMLA application could not be approved at that time due to the OCMO's letter. (Doc. No. 19-5, p.1; Doc. No. 19-15, p.15).

On November 14, 2016, Freeman sent Plaintiff, via email, a provisional FMLA letter of entitlement, which stated that Plaintiff's FMLA request was provisionally approved effective November 13, 2016, but that more medical documentation was required. (Def. Ex. 2). The provisional letter of approval specifically set forth the additional information required and gave 15 days (until November 29, 2016) to provide the additional medical information. (Id.).

After TSA's provisional grant of FLMA, Plaintiff immediately began submitting leave requests for sick leave based on the FMLA through five separate OPM Form 71s[2] titled "Request for Leave or Approved Absence," for the work dates of November 13, 2016, November 26, 2016, December 19, 2016, January 11, 2017, and January 14, 2017. Plaintiff's supervisor approved each request. (Doc. No. 19-6; Doc. No. 19-15, p.17; Def. Ex. 1 at 15:24–16:4).

An updated WH-380-E, with an added page dated 12/12/16 by Plaintiff's doctor regarding the listed medical conditions (well after the deadline to do so), was received by TSA on December 13, 2016. (Doc. No. 21; Def. Ex. 1 at 17:24–19:4). Nonetheless, Plaintiff's FMLA leave was formally approved, and on January 19, 2017, Plaintiff was sent an FMLA letter of entitlement which stated, inter alia:

> We have reviewed your application submitted on 12/13/2016 and have approved your intermittent FMLA in accordance with the guidelines for the following event:
> Serious health condition of the employee that makes the employee unable to perform the essential functions of his or her position.
> You may begin invoking your FMLA rights effective 11/13/2016."

---

[2] OPM Form 71 is a standard form used by federal employees to obtain a leave or approved absence from work.

(Doc. No. 19-9; see also Doc. No. 19-15, pp. 21, 58, 59).

### 2. Undisputed Facts Related to the Fitness for Duty Questionnaire and Notice of Proposed Medical Removal

TSA Management Directive No. 1100.33-2, "provides the TSA policy and procedures regarding TSA Management-Initiated Fitness for Duty Evaluations." (Doc. No. 19-10, p.1). A covered employee is any "employee occupying a position with medical requirements." (Id.). TSOs must be able to perform their job duties without impairment due to illegal drugs, medication, disease, or physical or mental conditions. They must also possess basic aptitudes and physical abilities, including color perception, visual and aural acuity, physical coordination and motor skills, while having sufficient dexterity and capability to thoroughly conduct pat-downs, and meet such other qualifications as TSA may establish. (Doc. No. 19-11; Doc. No. 19-12, ¶ 6).

Under the authority of the Aviation and Transportation Security Act ("ATSA"), TSA established and uses the Medical and Psychological Guidelines for Transportation Security Administration Transportation Security Officer Job Series (Medical Guidelines).[3] The Medical Guidelines establish standards for determining the medical suitability of individuals in security screening positions. They state whether a specific level of a condition is acceptable or unacceptable as well as the method of determining a TSO's suitability. See (Doc. No. 19-12, ¶¶ 7–11). In addition to meeting the requirements of the medical guidelines, TSOs must also demonstrate a daily fitness for duty without any impairment, which includes "a statutory requirement that mandates that a TSO cannot be impaired while on duty due to illegal drugs,

---

[3] Available at https://jobs.tsa.gov/Resources/TSO_Medical_Guidelines.pdf.

4

sleep deprivation, medication, or alcohol." See (TSA Management Directive No. 1100.33-1).[4]

TSOs are subject to medical and psychological guidelines/requirements, and TSOs are therefore "covered employees" under TSA policies for fitness for duty evaluations. TSA policy dictates that covered employees are responsible for (1) "meeting the medical requirements of their position" and (2) "complying with Management-Initiated Fitness for Duty evaluation requirements and procedures, including providing sufficient and relevant documentation within the required timeframe." (Doc. No. 19-10, p. 2). TSA policy further explicitly provides that "[e]mployees must cooperate with TSA's efforts to obtain medical information (e.g., documentation requests or TSA-ordered examinations, if applicable) necessary for rendering a fitness-for-duty determination" and sets forth specific requirements to that end, including deadlines to provide information upon request. (Id. at pp. 3–4).

TSA policy provides that an employee may be required to undergo a fitness for duty evaluation when, inter alia, TSA management officials:

> [l]earn of an employee's medical condition through self-report or through a credible third party and additional medical information is needed to assess the employee's ability to safely and effectively perform the essential functions of his/her position. For example, management officials may learn of an employee's medical condition through employee requests for leave, to include leave under the Family and Medical Leave Act . . .

(Id. at pp. 2–3).[5]

Following the submission of Plaintiff's FMLA Certification in October 2016, and

---

[4] Available at https://www.tsa.gov/sites/default/files/foia-readingroom/1100.33-1_tso_daily_fitness_for_duty.pdf.
[5] Further, "[c]overed employees are responsible for maintaining and demonstrating their fitness for duty and may be subject to fitness for duty evaluations as a routine part of maintaining their medical certification" in addition to management-initiated fitness for duty evaluations. (Id. at p. 3).

5

updated certification on December 13, 2016, each listing serious medical conditions that were potentially disqualifying and/or generally required prescribed medication, TSA human resources/management at the CLT airport requested an inquiry into Plaintiff's medical fitness for duty, to be performed by the OCMO. (Doc. No. 19-13, p.10; Doc. No. 19-15, p.14 (Lisa Freeman testimony that "Per the TSO medical guidelines, some medical conditions are disqualifying and in addition, certain medications are prohibited from use. Due to the severity and type of medical conditions that the Complainant disclosed on the FMLA application, we agreed that a Fitness for Duty would be appropriate to ensure that the Complainant did not have a disqualifying condition and was not taking any disqualifying medication."), pp. 44, 45, 74; see also Doc. No. 1, p. 12).

On December 14, 2016, Plaintiff was hand-delivered a Fitness for Duty Medical Questionnaire (dated 12/13/16), to be completed by Plaintiff's treating physician by January 13, 2017. (Doc. No. 19-13, pp.1, 6–12, Doc. No. 19-15, pp. 13, 20, 64, 69). It is undisputed that Plaintiff received the Fitness for Duty Questionnaire, but neither Plaintiff nor his treating physician provided a completed Fitness for Duty Medical Questionnaire to TSA by January 13, 2017, or any time thereafter. (Def. Ex. 1 at 21:7–16, Doc. No. 19-13, pp. 1, 5; Doc. No. 19-15, pp. 17, 20, 69). On January 17, 2017, Fabrice Czarnecki, the Chief Medical Officer for the OCMO concluded that the OCMO was unable to make a fitness for duty determination due to Plaintiff's refusal to cooperate. (Doc. No. 19-13, p. 5). On January 20, 2017, Plaintiff was sent a "Notice of Proposed Medical Removal." (Id. at pp. 1–4; Doc. No. 19-15, pp. 8, 77). The proposed removal was based on Plaintiff's refusal to cooperate with the TSA's medical inquiry. (Doc. No. 19-13, p. 1; see also Doc. No. 19-15, pp. 16, 17, 48, 77, 78).

Relevant to the specific notice Plaintiff received, TSA Management Directive No. 1100.33-2 states that "[i]f an employee fails to provide the requested medical documentation

within the timeframe or to comply with a TSA-ordered medical examination (e.g., no showing for the scheduled medical examination), he/she may be determined to be Not Medically Qualified for Full and Unrestricted Duty and/or be subject to discipline for non-compliance, up to and including removal from Federal service."

The Notice of Proposed Medical removal gave Plaintiff the right to reply within seven calendar days. (Doc. No. 19-13, p. 2). The Notice further stated that a "final decision will not be made in this matter until your timely written and/or oral replies have been received and considered, or, if no reply is received, until after the time specified for the replies has passed." (Id.). The Notice also informed Plaintiff of TSA policy that provided for his opportunity to apply for reassignment in the event he was medically disqualified from the TSO position. (Id. at 3; see also Def. Ex. 3).

Plaintiff received this notice and did not apply for reassignment to any other position. (Ex. 1 at 35:21–36:11). On January 27, 2017, Plaintiff submitted a "Notice of Retirement" to the TSA, stating his retirement was "effective January 28, 2017." (Doc. No. 19-14, p. 1; Doc. No. 19-15, p. 7, 78). Plaintiff's SF-86 reflects his voluntary retirement effective January 28, 2017. (Doc. No. 19-16; see further Ex. 1 at 38:12–40:7 (Plaintiff's testimony that he voluntarily retried by submitting the hand-delivered notice of retirement so that his wife could maintain health benefits, which she continues to receive).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

7

When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential

element of his claim.

## III. DISCUSSION

As noted, Plaintiff's sole claim against Defendant is that Defendant retaliated against Plaintiff in response to Plaintiff's filing of an EEO charge in January 2017, and then another EEO charge made after he left TSA's employment. To assert a claim of retaliation under Title VII, "a plaintiff must show that (1) that the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC"; (2) the employer took an adverse action against the plaintiff; and (3) "the protected activity was causally connected to the employer's adverse action." Okoli v. City of Balt., 648 F.3d 216, 223 (4th Cir. 2011) (internal quotation omitted). For conduct to be adverse in the retaliation context, it must be "materially adverse." Burlington Northern & Santa Fe Rwy. Co. v. White, 548 U.S. 53, 68 (2006).

Defendant is entitled to summary judgment because Plaintiff did not suffer an adverse employment action, an essential element of his Title VII retaliation claim. Plaintiff alleges that Defendant took the following adverse actions in retaliation for his EEO activity: (1) Defendant denied Plaintiff's FMLA requests that were submitted in October 2016; (2) Plaintiff received a Fitness-for-Duty ("FFD") questionnaire on December 16, 2016; and (3) Plaintiff was issued a Notice of Proposed Medical Removal on January 21, 2017. However, none of these three actions constituted an adverse action under Title VII.

First, as to Plaintiff's allegation that his October 2016 FMLA request was denied, this is factually incorrect. Defendant has produced evidence showing that Defendant in fact approved Plaintiff's FMLA request. (See Ex. 3 (conditional letter of approval); Doc. No. 19-9 (final letter of approval)). Moreover, the evidence shows that Plaintiff took FMLA leave on five separate occasions between October 2016 and January 2017—with the approval of his supervisor each

9

time—and was never denied any FMLA leave request he submitted. See (Ex. 1 at 15:24–16:4 ("Q: And all of these five requests were approved; correct? A: That's correct. Q: And you took FMLA leave on these five dates; correct? A. Yes."); 20:15–22 ("Q: You would agree with me that you took FMLA leave on five separate occasions from November 17 2016 until January 2017; correct? A: Yes. Q: Did you ever submit an FMLA leave request during that time period after October 2016 through January 2017 that was denied? A: No.").

Plaintiff next asserts that the TSA retaliated against him by issuing a fitness for duty questionnaire on December 16, 2016. However, courts have held repeatedly that an employer's issuance of a fitness for duty exam/questionnaire is not a materially adverse action. See Silva v. Bowie State Univ., 172 Fed. Appx. 476, 477 (4th Cir. 2006) (upholding the district court's decision that a request for a medical examination was not an adverse employment action) (unpublished); Moran v. Barr, No. 18-1986, 2020 WL 4286825, at **6–9 (D.D.C. July 27, 2020) (finding that a fitness for duty letter and review does not allege an adverse action); Giang v. Potter, 369 F. Supp. 2d 763, 769 (E.D. Va. 2005) (finding that requesting a fitness-for-duty examination was not an adverse employment action); Luttrell v. U.S. Postal Serv., No. 96-4087, 2000 WL 1279486, at *7 n.3 (D. Kan. Aug. 15, 2000) (same); Franklin v. Potter, 600 F. Supp. 2d 38, 67 (D.D.C. 2009) (same); Cortazzo v. City of Reading, No. 5:14cv2513, 2016 WL 1022267, at *4 (E.D. Pa. Mar. 15, 2016) (same); Burgos-Stefanelli v. Napolitano, No. 09-60118, 2010 WL 785802, at *9 (S.D. Fla. Mar. 5, 2010) (same), aff'd sub nom. Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec., 410 Fed. Appx. 243 (11th Cir. 2011); Gage v. U.S., No. 1:05cv2902, 2008 WL 974044, at *5 (N.D. Ohio Apr. 7, 2008) (same); Hunter v. Dist. of Columbia, 905 F. Supp. 2d 364, 374 (D.D.C. 2012) (same), aff'd sub nom. Hunter v. Dist. of Columbia Gov't, No. 13-7003, 2013 WL 5610262 (D.C. Cir. Sept. 27, 2013).

Requiring TSA workers to undergo fitness for duty examinations is simply part of their job requirement and not an adverse employment action. The Aviation and Transportation Security Act ("ATSA") authorizes the creation of the TSA screener workforce and contains both general and specific grants of personnel authority to TSA. Specifically, Section 111(d) of ATSA states:

> The Administrator shall establish qualification standards for individuals to be hired by the United States as security screening personnel. Notwithstanding any other provision of law, those standards shall require, at a minimum, an individual—
> . . .
> (v) to have the ability to demonstrate daily a fitness for duty without any impairment due to illegal drugs, sleep deprivation, medication, or alcohol.

Id. (citing 49 U.S.C. § 44935(e)(2)(A)). Additionally, 49 U.S.C. § 44935(f) provides that "[n]otwithstanding any other provision of law, an individual may not be deployed as a security screener unless that individual meets [certain enumerated requirements],' and screeners must 'possess basic aptitudes and physical abilities, including color perception, visual and aural acuity, physical coordination, and motor skills." To that end, the TSA developed medical guidelines that apply equally to all security screeners. (See Doc. Nos. 19-11 and 19-12, https://jobs.tsa.gov/Resources/TSO_Medical_Guidelines.pdf).

It is undisputed that a necessary requirement of Plaintiff's job as a TSA security screener or LTSO was demonstrating a daily fitness for duty. Therefore, there was nothing improper, unusual, or unauthorized about the TSA initiating a fitness for duty evaluation upon Plaintiff's disclosure of medical conditions when he requested FMLA leave. Rather, this circumstance is one of the enumerated examples under TSA's policy of when an employee may be required to undergo a fitness for duty evaluation. (See Doc. No. 19-10 at pp. 2–3 ("For example, management officials may learn of an employee's medical condition through employee requests

11

for leave, to include leave under the Family and Medical Leave Act . . .")).

The Court further finds that, contrary to Plaintiff's argument, the Notice of Proposed Medical Removal that was issued to Plaintiff was also not an adverse action. See Bowe-Connor v. Shinseki, 923 F. Supp. 2d 1, 8 (D.D.C. 2013) ("However, a notice of proposed suspension does not constitute an adverse action . . . Accordingly, Bowe–Connor cannot proceed on a retaliation claim based on her proposed letter of suspension.") (listing authorities). Indeed, the undisputed fact is that Plaintiff resigned before the proposed removal became final. (Doc. Nos. 19-14 and 19-16). As the federal district court for the Eastern District of Virginia explained:

> Finally, and most pertinent, where, as here, a plaintiff voluntarily resigns, an adverse employment action does not occur. See Honor v. Booz–Allen & Hamilton, Inc., 383 F.3d 180, 186 (4th Cir. 2004) (holding that retaliation and wrongful termination claims could not proceed because "a reasonable jury only could find that [plaintiff] voluntarily resigned his employment . . ."). And as defendants point out, when the proposed removal notice was prepared, plaintiff had the opportunity to answer her proposed removal and failed to do so, choosing instead to resign. This resignation prevented the proposed removal notice from becoming final and this lack of finality means that the proposed removal notice is not an adverse employment action. See Brooks v. City of San Mateo, 229 F.3d 917, 929–30 (9th Cir. 2000) ("[Plaintiff] abandoned her job while the appeal was pending. Because the evaluation could well have been changed on appeal, it was not sufficiently final to constitute an adverse employment action.").

Ferguson v. Holder, No. 1:14-cv-1641, 2015 WL 11117148, at *5 (E.D. Va. Feb. 9, 2015), aff'd sub nom. Ferguson v. Lynch, 620 Fed. Appx. 206 (4th Cir. 2015) (unpublished).

Here, the Notice of Proposed Medical Removal makes clear that it was merely notice of a proposed action. (Doc. No. 19-13, p. 2; see also Doc. No. 19-15, pp. 8, 16, 17, 48, 77, 78). Plaintiff was given time to respond, seek additional time, submit evidence for the TSA's consideration, explain why the FFD questionnaire had not been submitted, or apply for

reassignment.[6] He also could have done nothing and waited for the agency to issue a final decision. Instead, he voluntarily retired.[7] Accord Hardy v. Potter, 191 F. Supp. 2d 873, 883 (E.D. Mich. 2002) ("The Notice of Proposed Removal was essentially a warning letter to Plaintiff. No termination resulted from the Notice of Removal. Plaintiff cannot point to any adverse action by Defendant . . . As to the retaliation claim, based on the above, Plaintiff cannot show an 'adverse action' by Defendant. Any complaint as to the Notice is premature or moot since no removal or termination occurred as a result of the Notice.").

In sum, because Plaintiff has not shown that he was subject to any adverse employment action, he has failed to prove his prima facie case of retaliation.[8] Here, again, the undisputed facts show that, after he received the Notice of Proposed Medical Removal, Plaintiff responded by voluntarily resigning. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## IV. CONCLUSION

For the reasons stated herein, Defendant is entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

---

[6] Plaintiff submitted a response received by TSA after his retirement was effective on January 28, 2017, which was not considered because Plaintiff had already retired.
[7] Plaintiff has admitted that he voluntarily retired to maintain health benefits for his wife. (Def. Ex. 1 at 36:12–20).
[8] Even if Plaintiff could establish a prima facie retaliation claim, he cannot demonstrate the TSA's established legitimate, non-retaliatory reasons for both the issuance of Plaintiff's Fitness for Duty Questionnaire and Notice of Proposed Medical Removal were pretextual. Moreover, as Defendant notes, TSA issued the FFD questionnaire before the EEO activity Plaintiff claims forms the basis for TSA's purported retaliation. Plaintiff makes clear the EEO activity underlying his retaliation claim occurred on January 10, 2017, and after. (Def. Ex. 1, Campbell Dep., 41:9-43:1). However, he submitted his original FMLA leave request in October 2016, and TSA issued the FFD questionnaire—for which his non-compliance forms the basis of the January 2017 Notice of Proposed Medical removal—in December 2016.

13

1. Defendant's Motion for Summary Judgment, (Doc. No. 56), is **GRANTED**.

2. This action is dismissed with prejudice.

3. The Clerk is directed to terminate this action.

Signed: July 14, 2023

Max O. Cogburn Jr.
United States District Judge